**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

        v.                           Civil Action No. 0:26-cv-1144

ABB, INC.,

          Defendant.

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      BACKGROUND ....................................................................................................... 3
II.     JURISDICTION AND VENUE ............................................................................... 6
III.    PARTIES BOUND ................................................................................................... 6
IV.     DEFINITIONS ......................................................................................................... 7
V.      OBJECTIVES ........................................................................................................ 11
VI.     PERFORMANCE OF THE WORK ...................................................................... 12
VII.    PROPERTY REQUIREMENTS ........................................................................... 14
VIII.   FINANCIAL ASSURANCE ................................................................................. 17
IX.     INDEMNIFICATION AND INSURANCE .......................................................... 21
X.      PAYMENTS FOR RESPONSE COSTS ............................................................... 24
XI.     FORCE MAJEURE ............................................................................................... 25
XII.    DISPUTE RESOLUTION ..................................................................................... 27
XIII.   STIPULATED PENALTIES ................................................................................. 30
XIV.    COVENANTS BY PLAINTIFF ........................................................................... 33
XV.     COVENANTS BY SETTLING DEFENDANT .................................................... 35
XVI.    EFFECT OF SETTLEMENT; CONTRIBUTION ................................................ 37
XVII.   RECORDS .............................................................................................................. 38
XVIII.  NOTICES AND SUBMISSIONS.......................................................................... 41
XIX.    APPENDIXES ........................................................................................................ 42
XX.     MODIFICATIONS TO DECREE .......................................................................... 42
XXI.    SIGNATORIES ...................................................................................................... 43
XXII.   PRE-ENTRY PROVISIONS .................................................................................. 43
XXIII.  INTEGRATION ..................................................................................................... 43
XXIV.   FINAL JUDGMENT ............................................................................................. 43

## I.     BACKGROUND

1.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter under sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

2.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Henry's Knob Superfund Site in Clover, South Carolina ("Site"), together with accrued interest; and (2) performance by the defendant of a response action at the Site consistent with the National Contingency Plan, 40 C.F.R. part 300 ("NCP").

3.      In accordance with the NCP and section 121(f)(1)(F) of CERCLA, EPA notified the State of South Carolina ("State") on June 26, 2020, of negotiations with the potentially responsible party ("PRP") regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and to be a party to this Consent Decree ("Decree").

4.      In accordance with section 122(j)(1) of CERCLA, EPA notified the National Oceanic and Atmospheric Administration, U.S. Department of Interior, and U.S. Fish & Wildlife Service on June 26, 2020, of negotiations with the PRP regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Decree.

5.      The defendant that has entered into this Decree ("Settling Defendant") does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous

3

substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

6. Settling Defendant is ABB, Inc., a Delaware corporation and a United States subsidiary of ABB, Ltd., a Swiss-Swedish multinational corporation headquartered in Zurich, Switzerland. Settling Defendant is liable under section 107(a)(2) of CERCLA as the successor to the owner and operator of the Site at the time of disposal of hazardous substances.

7. In response to a release or a substantial threat of a release of hazardous substances at or from the Site, Settling Defendant completed a Remedial Investigation for the Site in June 2011, and a Feasibility Study for the Site in August 2019, in accordance with 40 C.F.R. § 300.430.

8. In accordance with section 117 of CERCLA and 40 C.F.R § 300.430(f), EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on August 23, 2019, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action, including at a public meeting held on August 29, 2019, at the Larne Building located at 103 Main Street, Clover, South Carolina. A copy of the documents presented at the public meeting and comments received are available to the public as part of the administrative record upon which the Acting Director of the Superfund and Emergency Management Division, EPA Region 4, based the selection of the remedial action.

9. EPA selected a remedial action to be implemented at the Site, which is embodied in an Interim Record of Decision ("Interim Record of Decision"), executed on September 30, 2019. The remedial action selected in the IROD includes institutional controls for groundwater and institutional controls, maintenance, and monitoring for source areas. EPA deferred a final Record

4

of Decision for the Site to allow time for further evaluation of the effectiveness of previously implemented source control actions and natural attenuation processes in reducing contamination in the overburden groundwater zone and for monitoring the effects of that remediation on contamination within bedrock groundwater and surface water. The Interim Record of Decision includes a summary of responses to the public comments. Notice of the final plan was published in accordance with section 117(b) of CERCLA.

10.     EPA modified the remedial action selected in the Interim Record of Decision with an Explanation of Significant Differences ("ESD"), executed on March 30, 2021. The ESD calls for construction of additional groundwater monitoring wells to provide the data necessary for implementation of the remedial action selected in the Interim Record of Decision. EPA satisfied public participation requirements for the ESD by making the ESD and supporting information available to the public in the administrative record and by publishing a notice summarizing the ESD in a major local newspaper of general circulation.

11.     EPA expects to evaluate whether any further remedial action will be necessary at the Site beyond those remedial actions specified in the Interim Record of Decision and, if so, the extent of such further remedial action. EPA's selection of a final groundwater or surface water remedy will be memorialized in a Record of Decision document.

12.     Based on the information currently available, EPA has determined that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this Decree.

13.     The Parties recognize, and the Court by entering this Decree finds, that this Decree has been negotiated by the Parties in good faith, that implementation of this Decree will expedite

the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

NOW, THEREFORE, it is hereby **ORDERED** and **DECREED** as follows:

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345, and sections 106 and 113(b) of CERCLA, and personal jurisdiction over the Parties. Venue lies in this District under section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. Settling Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III.     PARTIES BOUND

15.     This Decree is binding upon the United States and upon Settling Defendant and its successors. Unless the United States otherwise consents, (a) any change in ownership or corporate or other legal status of Settling Defendant, including any transfer of assets, or (b) any Transfer of the Site or any portion thereof, does not alter any of Settling Defendant's obligations under this Decree. Settling Defendant's responsibilities under this Decree cannot be assigned except under a modification executed in accordance with ¶ 78.

16.     In any action to enforce this Decree, Settling Defendant may not raise as a defense the failure of any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Settling Defendant to take any action necessary to

comply with this Decree. Settling Defendant shall provide notice of this Decree to each person representing Settling Defendant with respect to the Site or the Work. Settling Defendant shall provide notice of this Decree to each contractor performing any Work and shall ensure that notice of the Decree is provided to each subcontractor performing any Work.

## IV.    DEFINITIONS

17.    Subject to the next sentence, terms used in this Decree that are defined in CERCLA or the regulations promulgated under CERCLA have the meanings assigned to them in CERCLA and the regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" means this consent decree, all appendixes attached hereto (listed in Section XIX), and all deliverables incorporated into the Decree under ¶ 7.6 of the SOW. If there is a conflict between a provision in Sections I through XXIV and a provision in any appendix or deliverable, the provision in Sections I through XXIV controls.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

7

"Fund" means the Hazardous Substance Superfund established under section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"Future Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States: (a) pays between September 24, 2022, and the Effective Date; and (b) pays after the Effective Date in implementing, overseeing, or enforcing this Decree, including, but not limited to: (i) developing, reviewing and approving deliverables generated under this Decree; (ii) overseeing Settling Defendant's performance of the Work; (iii) assisting or taking action to obtain access or use restrictions under ¶ 24.e; (iv) securing, implementing, monitoring, maintaining, or enforcing Institutional Controls, including any compensation paid; (v) taking action under ¶ 32 (Access to Financial Assurance); (vi) taking response action described in ¶ 60 because of Settling Defendant's failure to take emergency action under ¶ 5.4 of the SOW; (vii) implementing a Work Takeover under ¶ 23; (viii) implementing community involvement activities including the cost of any technical assistance grant provided under section 117(e) of CERCLA; (ix) enforcing this Decree, including all costs paid under Section XII (Dispute Resolution) and all litigation costs except those costs EPA incurs to defend a dispute by the Settling Defendant if the Settling Defendant prevails in the dispute; and (x) conducting periodic reviews in accordance with section 121(c) of CERCLA. Future Response Costs also includes all Interest accrued from September 24, 2022, on EPA's unreimbursed costs (including Past Response Costs) under section 107(a) of CERCLA.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (*i.e.*, easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for

8

which notice is recorded, in the appropriate land records office) and State or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Fund, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Interim Record of Decision" means the EPA decision document that memorializes the selection of the interim remedial action relating to the Site signed on September 30, 2019, by the Director of the Superfund and Emergency Management Division, EPA Region 4, and all attachments thereto, as modified by the Explanation of Significant Differences ("ESD") signed on March 30, 2021, by the Acting Director of the Superfund & Emergency Management Division, EPA Region 4. The Interim Record of Decision is attached as Appendix A. The ESD is attached as Appendix B.

"National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under section 105 of CERCLA, codified at 40 C.F.R. part 300, and any amendments thereto.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" means the United States and Settling Defendant.

"Past Response Costs" means all costs (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States paid in connection with the Site through September 23, 2022, plus all interest on such costs accrued under section 107(a) of CERCLA through such date.

"Performance Standards" means the measures of achievement of the remedial action objectives, as set forth in the Interim Record of Decision.

"Plaintiff" means the United States.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992k, (also known as the Resource Conservation and Recovery Act).

"Remedial Action" means the remedial action selected in the Interim Record of Decision as modified by the Explanation of Significant Differences.

"Remedial Design" means those activities to be undertaken by Settling Defendant to develop plans and specifications for implementing the Remedial Action as set forth in the SOW.

"Scope of the Remedy" means the scope of the remedy set forth in ¶ 1.3 of the SOW.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendant" means ABB, Inc.

"Site" means the Henry's Knob Superfund Site, comprising approximately 185 acres, located in the vicinity of State Highway 55 and Henry's Knob Road in Clover, York County, South Carolina, and depicted generally on the map attached as Appendix C.

"Special Account" means the special account, within the Fund, established for the Site by EPA under section 122(b)(3) of CERCLA.

"State" means the State of South Carolina.

"Statement of Work" or "SOW" means the document attached as Appendix D, which describes the activities Settling Defendant must perform to implement and maintain the effectiveness of the Remedial Action.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" means (a) any "hazardous substance" under section 101(14) of CERCLA; (b) any pollutant or contaminant under section 101(33) of CERCLA; (c) any "solid waste" under section 1004(27) of RCRA; and (d) any "hazardous waste" under section 44-56-20(6) of the South Carolina Hazardous Waste Management Act or R.61-79.261 of the South Carolina Hazardous Waste Management Regulations.

"Work" means all obligations of Settling Defendant under Sections VI (Performance of the Work) through IX (Indemnification and Insurance).

"Work Takeover" means EPA's assumption of the performance of any of the Work in accordance with ¶ 23.

## V.    OBJECTIVES

18.    The objectives of the Parties in entering into this Decree are to protect public health, welfare, and the environment through the design, implementation, operation,

maintenance, and monitoring of the Remedial Action at the Site by Settling Defendant, to pay Past and Future Response Costs of Plaintiff, and to resolve and settle the claims of Plaintiff against Settling Defendant as provided in this Decree.

## VI.    PERFORMANCE OF THE WORK

19.    Settling Defendant shall finance, design, implement, operate, maintain, and monitor the effectiveness of the Remedial Action all in accordance with the SOW, any modified SOW and all EPA-approved, conditionally approved, or modified deliverables as required by the SOW or modified SOW.

20.    Nothing in this Decree and no EPA approval of any deliverable required under this Decree constitutes a warranty or representation by EPA that completion of the Work will achieve the Performance Standards.

21.    **Modifications to the Remedial Action and Further Response Actions**

a.    Nothing in this Decree limits EPA's authority to modify the Remedial Action or to select further response actions for the Site in accordance with the requirements of CERCLA and the NCP. Nothing in this Decree limits Settling Defendant's rights, under sections 113(k)(2) or 117 of CERCLA, to comment on any modified or further response actions proposed by EPA. If EPA modifies the Remedial Action in order to achieve or maintain the Performance Standards, or both, or to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy, then Settling Defendant shall implement the modification as provided in ¶ 21.b.

b.    Upon receipt of notice from EPA that it has modified the Remedial Action as provided in ¶ 21.a and requesting that Settling Defendant implement the modified Remedial Action, Settling Defendant shall implement the modification, subject to its right to initiate

12

dispute resolution under Section XII within 30 days after receipt of EPA's notice. Settling Defendant shall modify the SOW, or related work plans, or both in accordance with the Remedial Action modification or, if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The Remedial Action modification, the approved modified SOW, and any related work plans will be deemed to be incorporated into and enforceable under this Decree.

22.     **Compliance with Applicable Law**. Nothing in this Decree affects Settling Defendant's obligations to comply with all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the Interim Record of Decision and the SOW. The activities conducted in accordance with this Decree, if approved by EPA, will be deemed to be consistent with the NCP as provided under section 300.700(c)(3)(ii).

23.     **Work Takeover**

a.     If EPA determines that Settling Defendant (i) has ceased to perform any of the Work required under this Section; (ii) is seriously or repeatedly deficient or late in performing the Work required under this Section; or (iii) is performing the Work required under this Section in a manner that may cause an endangerment to human health or the environment, EPA may issue a notice of Work Takeover to Settling Defendant, including a description of the grounds for the notice and a period of time ("Remedy Period") within which Settling Defendant must remedy the circumstances giving rise to the notice. The Remedy Period will be 20 days, unless EPA determines in its unreviewable discretion that there may be an endangerment, in which case the Remedy Period will be 10 days.

b.    If, by the end of the Remedy Period, Settling Defendant does not remedy to EPA's satisfaction the circumstances giving rise to the notice of Work Takeover, EPA may notify Settling Defendant and, as it deems necessary, commence a Work Takeover.

c.    EPA may conduct the Work Takeover during the pendency of any dispute under Section XII but shall terminate the Work Takeover if and when: (i) Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to the notice of Work Takeover; or (ii) upon the issuance of a final determination under Section XII (Dispute Resolution) that EPA is required to terminate the Work Takeover.

## VII.    PROPERTY REQUIREMENTS

24.    **Agreements Regarding Access and Noninterference**

a.    As used in this Section, "Affected Property" means any real property, including the Site, where EPA determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.

b.    Settling Defendant shall use best efforts to secure from the owner(s), other than Settling Defendant and the owner of York County Parcel Number 2750000026, of all Affected Property, an agreement, enforceable by Settling Defendant and by Plaintiff, requiring such owner to provide Plaintiff and Settling Defendant, and their respective representatives, contractors, and subcontractors with access at all reasonable times to such owner's property to conduct any activity regarding the Decree, including the following:

(1)    implementing the Work and overseeing compliance with the Decree;

(2)    conducting investigations of contamination at or near the Site;

(3)     assessing the need for, planning, or implementing additional response actions at or near the Site;

(4)     determining whether the Site is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Decree; and

(5)     implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

c.     Further, each agreement required under ¶ 24.b must commit the owner to refrain from using its property in any manner that EPA determines will pose an unacceptable risk to public health or welfare or the environment as a result of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. Each agreement required under ¶ 24.b must commit the owner to refrain from using as human drinking water any untreated groundwater that contains contaminant levels exceeding the remedial goals selected in the IROD if EPA determines the contamination has resulted from the operation of the former mine at the Site.

d.     As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements.

e.     Settling Defendant shall provide to EPA a copy of each agreement required under ¶ 24.b. If Settling Defendant cannot accomplish what is required through best efforts in a timely manner, it shall notify EPA, and include a description of the steps taken to

achieve the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, to obtain such access or use restrictions.

25. **Access and Noninterference by Settling Defendant**. The Settling Defendant shall: (a) provide Plaintiff and its representatives, contractors, and subcontractors with access at all reasonable times to the Site to conduct any activity regarding the Decree, including those listed in ¶ 24.b; and (b) refrain from using the Site in any manner that EPA determines will pose an unacceptable risk to human health or to the environment because of exposure to Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

26. If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of State or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendant shall use best efforts to cooperate with EPA's efforts to secure and ensure compliance with such Institutional Controls.

27. **Notice to Successors-in-Title**

a. Settling Defendant shall, within 15 days after the Effective Date, submit for EPA approval a notice to be recorded regarding its property at the Site in the appropriate land records. The notice must: (1) include a proper legal description of the property; (2) provide notice to all successors-in-title: (i) that the property is part of, or affected by, the Site; (ii) that EPA has selected a remedy for the Site; and (iii) that a potentially responsible party has entered into a Decree requiring implementation of such remedy; and (3) identify the U.S. District Court in which the Decree was filed, the name and civil action number of this case, and the Effective Date of the Decree. Settling Defendant shall record the notice within 10 days after EPA's

approval of the notice and submit to EPA, within 10 days thereafter, a certified copy of the recorded notice.

        b.      Settling Defendant shall, prior to entering into a contract to Transfer any of its property that is part of the Site, or 60 days prior to a Transfer of such property, whichever is earlier:

        (1)     notify the proposed transferee that EPA has selected a Remedial Action regarding the Site, that a potentially responsible party has entered into a Consent Decree requiring implementation of such remedy, and that the United States District Court has entered the Decree (identifying the name and civil action number of this case and the date the Court entered the Decree); and

        (2)     notify EPA of the name and address of the proposed transferee and provide EPA with a copy of the notice that it provided to the proposed transferee.

28.    Notwithstanding any provision of the Decree, EPA retains all of its access authorities and rights, as well as all of its rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

## VIII.  FINANCIAL ASSURANCE

29.    To ensure completion of the Work required under Section VI, Settling Defendant shall secure financial assurance, initially in the amount of $1,152,918.00 ("Estimated Cost of the Work"), for the benefit of EPA. The financial assurance must: (i) be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents

available from EPA; and (ii) be satisfactory to EPA. As of the date of lodging of this Decree, the sample documents can be found under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/. Settling Defendant may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, insurance policies, or some combination thereof. The following are acceptable mechanisms:

a.    a surety bond guaranteeing payment, performance of the Work, or both, that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    an irrevocable letter of credit, payable to EPA or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.    a trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency; or

d.    a policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency.

30.    Settling Defendant shall, within 45 days after the Effective Date, seek EPA's approval of the form of Settling Defendant's financial assurance. Within 30 days after such approval, Settling Defendant shall secure all executed or otherwise finalized mechanisms or other

documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the EPA Program Analyst and to DOJ in accordance with ¶ 76.

31.     Settling Defendant shall diligently monitor the adequacy of the financial assurance. If Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Settling Defendant shall notify EPA of such information within seven 7 days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify Settling Defendant of such determination. Settling Defendant shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 60 days. Settling Defendant shall follow the procedures of ¶ 33 in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other requirement of this Decree.

32.     **Access to Financial Assurance**

a.     If EPA issues a notice of a Work Takeover under ¶ 23.b, then, in accordance with any applicable financial assurance mechanism, EPA may require that any funds guaranteed be paid in accordance with ¶ 32.d.

b.     If EPA is notified that the issuer of a financial assurance mechanism intends to cancel the mechanism, and Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 32.d.

c.     If, upon issuance of a notice of a Work Takeover under ¶ 23.b EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendant shall, within 30 days after such demand, pay the amount demanded as directed by EPA.

d.     Any amounts required to be paid under this ¶ 32 must be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the Fund or into the Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the Fund.

33.     **Modification of Amount, Form, or Terms of Financial Assurance**. Beginning after the first anniversary of the Effective Date, and no more than once per calendar year, Settling Defendant may submit a request to change the form, terms, or amount of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 30, and must include an estimate of the cost of the remaining Work, an explanation of the bases

20

for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendant of its decision regarding the request. Settling Defendant may initiate dispute resolution under Section XII regarding EPA's decision within 30 days after receipt of the decision. Settling Defendant may modify the form, terms, or amount of the financial assurance mechanism only: (a) in accordance with EPA's approval; or (b) in accordance with any resolution of a dispute under Section XII. Settling Defendant shall submit to EPA, within 30 days after receipt of EPA's approval or consistent with the terms of the resolution of the dispute, documentation of the change to the form, terms, or amount of the financial assurance instrument.

34.    **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA issues a Certification of Work Completion under ¶ 5.8 of the SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XII.

## IX.    INDEMNIFICATION AND INSURANCE

35.    **Indemnification**

a.    Plaintiff does not assume any liability by entering into this Decree or by virtue of any designation of Settling Defendant as EPA's authorized representative under section 104(e)(1) of CERCLA. Settling Defendant shall indemnify and save and hold harmless Plaintiff and its officials, agents, employees, contractors, subcontractors, and representatives for or from any claims or causes of action arising from, or on account of, negligent or other

21

wrongful acts or omissions of Settling Defendant, officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities under this Decree, including any claims arising from any designation of Settling Defendant as EPA's authorized representative under section 104(e)(1) of CERCLA. Further, Settling Defendant agrees to pay Plaintiff all costs it incurs including attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against Plaintiff based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control in carrying out activities under this Decree. Plaintiff may not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities under this Decree. Settling Defendant and any such contractor may not be considered an agent of Plaintiff.

b.     Plaintiff shall give Settling Defendant notice of any claim for which Plaintiff plans to seek indemnification in accordance with this ¶ 35, and shall consult with Settling Defendant prior to settling such claim.

36.     Settling Defendant covenants not to sue and shall not assert any claim or cause of action against Plaintiff for damages or reimbursement or for set-off of any payments made or to be made to Plaintiff, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work or other activities on or relating to the Site, including claims on account of construction delays. In addition, Settling Defendant shall indemnify and save and hold Plaintiff harmless with respect to any claims for damages or reimbursement arising from or on account of any contract, agreement, or

22

arrangement between Settling Defendant and any person for performance of work at or relating to the Site, including claims on account of construction delays.

37.     **Insurance**. Settling Defendant shall secure, by no later than 15 days before commencing any on-site Work, the following insurance: (a) commercial or comprehensive general liability insurance with limits of liability of $1 million per occurrence and annual aggregate; (b) automobile liability insurance with limits of liability of $1 million per accident; and (c) umbrella liability insurance with limits of liability of $5 million per occurrence and annual aggregate in excess of the required commercial/comprehensive general liability and automobile liability limits. The insurance policy must name Plaintiff as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant under this Decree. Settling Defendant shall maintain this insurance until the first anniversary after issuance of EPA's Certification of Remedial Action Completion under ¶ 5.7 of the SOW. In addition, for the duration of this Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Decree. Prior to commencement of the Work, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates, as well as copies of any changed policies, each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or

subcontractor. Settling Defendant shall ensure that all submittals to EPA under this Paragraph identify the Henry's Knob Superfund Site in Clover, South Carolina, Site/Spill ID Number A46W and the civil action number of this case.

## X.     PAYMENTS FOR RESPONSE COSTS

38.     **Payment for Past Response Costs**. Within 30 days after the Effective Date, Settling Defendant shall pay EPA, in reimbursement of Past Response Costs in connection with the Site, $471,405.16. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of South Carolina shall provide to Settling Defendant, in accordance with ¶ 76, instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant shall make such payment at https://www.pay.gov in accordance with the FLU's instructions, including references to the CDCS Number, Site/Spill ID Number A46W, and DJ Number 90-11-3-12317. Settling Defendant shall send notices of this payment to DOJ and the EPA Program Analyst in accordance with ¶ 76. If the payment required under this Paragraph is late, Settling Defendant shall pay, in addition to any stipulated penalties owed under Section XIII, an additional amount for Interest accrued from the Effective Date until the date of payment.

39.     **Payments by Settling Defendant for Future Response Costs**

a.     **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant a bill for Future Response Costs, including a standard cost summary listing direct and indirect costs paid by EPA, its contractors, subcontractors, and DOJ. Settling Defendant may initiate a dispute under Section XII regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (i) whether EPA has made an arithmetical error; (ii) whether EPA has included a cost item that is not within the definition of Future Response

24

Costs; or (iii) whether EPA has paid excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

b.    **Payment of Bill**. Settling Defendant shall pay the bill, or if it initiates dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (i) the uncontested bill or portion of bill, if late, and; (ii) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link and including references to the Site/Spill ID and DJ numbers listed in ¶ 76 and the purpose of the payment. Settling Defendant shall send notices of this payment to DOJ and the EPA Program Analyst in accordance with ¶ 76.

40.    **Deposit of Payments**. EPA may, in its unreviewable discretion, deposit the amounts paid under ¶¶ 38 and 39.b in the Fund, in the Special Account, or both. EPA may, in its unreviewable discretion, retain and use any amounts deposited in the Special Account to conduct or finance response actions at or in connection with the Site, or transfer those amounts to the Fund.

## XI.    FORCE MAJEURE

41.    "Force majeure," for purposes of this Decree, means any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation

under this Decree despite Settling Defendant's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Settling Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

42.     If any event occurs for which Settling Defendant will or may claim a force majeure, Settling Defendant shall notify EPA's Project Coordinator by email. The deadline for the initial notice is 3 days after the date Settling Defendant first knew or should have known that the event would likely delay performance. Settling Defendant shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by Settling Defendant knew or should have known. Within 7 days thereafter, Settling Defendant shall send a further notice to EPA that includes: (i) a description of the event and its effect on Settling Defendant's completion of the requirements of the Decree; (ii) a description of all actions taken or to be taken to prevent or minimize the adverse effects or delay; (iii) the proposed extension of time for Settling Defendant to complete the requirements of the Decree; (iv) a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment; and (v) all available proof supporting its claim of force majeure. Failure to comply with the notice requirements herein regarding an event precludes Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite late or incomplete notice, is able to

26

assess to its satisfaction whether the event is a force majeure under ¶ 41 and whether Settling Defendant has exercised best efforts under ¶ 41, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

43.     EPA will notify Settling Defendant of its determination whether Settling Defendant is entitled to relief under ¶ 41, and, if so, the duration of the extension of time for performance of the obligations affected by the force majeure. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. Settling Defendant may initiate dispute resolution under Section XII regarding EPA's determination within 15 days after receipt of the determination. In any such proceeding, Settling Defendant has the burden of proving that it is entitled to relief under ¶ 41 and that its proposed extension was or will be warranted under the circumstances.

44.     The failure by EPA to timely complete any activity under the Decree or the SOW is not a violation of the Decree, provided, however, that if such failure prevents Settling Defendant from timely completing a requirement of the Decree, Settling Defendant may seek relief under this Section.

## XII.   DISPUTE RESOLUTION

45.     Unless otherwise provided in this Decree, Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendant shall not initiate a dispute challenging the Interim Record of Decision. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

46.     A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute") in accordance with ¶ 76. Disputes arising under

this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by EPA is binding unless Settling Defendant initiates formal dispute resolution under ¶ 47. By agreement of the parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

47.    **Formal Dispute Resolution**

a.    **Statements of Position**. Settling Defendant may initiate formal dispute resolution by serving on the Plaintiff, within 20 days after the conclusion of informal dispute resolution under ¶ 46, an initial Statement of Position regarding the matter in dispute. The Plaintiff's responsive Statement of Position is due within 60 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 days after receipt of the response. If appropriate, EPA may extend the deadlines for filing statements of position for up to 45 days and may allow the submission of supplemental statements of position.

b.    **Formal Decision**. The Director of the Superfund & Emergency Management Division, EPA Region 4, will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendant unless it timely seeks judicial review under ¶ 48.

c.    **Compilation of Administrative Record**. EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position and the Formal Decision.

48.    **Judicial Review**

a.    Settling Defendant may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b.    **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a Work Takeover is warranted under ¶ 23; (iv) determinations about financial assurance under Section VIII; (v) EPA's selection of modified or further response actions; (vi) any other items requiring EPA approval under the Decree; and (vii) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendant bears the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c.    Judicial review of any dispute not governed by ¶ 48.b shall be governed by applicable principles of law.

49.    **Escrow Account**. For disputes regarding a Future Response Cost billing, Settling Defendant shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"); (b) remit

to that escrow account funds equal to the amount of the contested Future Response Costs; and

(c) send to EPA, in accordance with ¶ 76, copies of the correspondence and of the payment

documentation (e.g., the check) that established and funded the escrow account, including the

name of the bank, the bank account number, and a bank statement showing the initial balance in

the account. EPA may, in its unreviewable discretion, waive the requirement to establish the

escrow account. Settling Defendant shall cause the escrow agent to pay the amounts due to EPA

under ¶ 39, if any, by the deadline for such payment in ¶ 39. Settling Defendant is responsible for

any balance due under ¶ 39 after the payment by the escrow agent.

50.     The initiation of dispute resolution procedures under this Section does not extend,

postpone, or affect in any way any requirement of this Decree, except as EPA agrees, or as

determined by the Court. Stipulated penalties with respect to the disputed matter will continue to

accrue, but payment is stayed pending resolution of the dispute, as provided in ¶ 53.

## XIII.  STIPULATED PENALTIES

51.     Unless the noncompliance is excused under Section XI (Force Majeure), Settling

Defendant is liable to the United States for the following stipulated penalties:

a.     for any failure: (i) to pay any amount due under Section X; (ii) to establish

and maintain financial assurance in accordance with Section VIII; (iii) to obtain insurance in

accordance with Section IX; (iv) to submit timely or adequate deliverables under Section 7 of the

SOW:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $2,000 |
| 15th through 30th day | $3,500 |

| | |
|---|---|
| 31st day and beyond | $6,000 |

b.     for any failure to submit timely or adequate deliverables required by this Decree other than those specified in ¶ 51.a:

| Period of Noncompliance | Penalty Per Noncompliance Per Day |
|---|---|
| 1st through 14th day | $1,250 |
| 15th through 30th day | $2,500 |
| 31st day and beyond | $5,000 |

52.     **Work Takeover Penalty**. If EPA commences a Work Takeover, Settling Defendant is liable for a stipulated penalty in the amount of $250,000. This stipulated penalty is in addition to the remedy available to EPA under ¶ 32 (Access to Financial Assurance) to fund the performance of the Work by EPA.

53.     **Accrual of Penalties**. Stipulated penalties accrue from the date performance is due, or the day a noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether Settling Defendant has been notified of its noncompliance, and regardless of whether Settling Defendant has initiated dispute resolution under Section XII, provided, however, that no penalties will accrue as follows:

a.     with respect to a submission that EPA subsequently determines is deficient under ¶ 7.6 of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency;

31

b.       with respect to a matter that is the subject of dispute resolution under Section XII, during the period, if any, beginning on the 21st day after the later of the date that EPA's Statement of Position is received or the date that Settling Defendant's reply thereto (if any) is received until the date of the Formal Decision under ¶ 47.b; or

c.       with respect to a matter that is the subject of judicial review by the Court under ¶ 48, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

54.       **Demand and Payment of Stipulated Penalties**. EPA may send Settling Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendant may initiate dispute resolution under Section XII within 30 days after receipt of the demand. Settling Defendant shall pay the amount demanded or, if it initiates dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Settling Defendant shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendant shall make payment at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID and DJ numbers listed in ¶ 76, and the purpose of the payment. Settling Defendant shall send a notice of this payment to DOJ and the

EPA Program Analyst in accordance with ¶ 76. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendant under the Decree.

55.     Nothing in this Decree limits the authority of the United States: (a) to seek any remedy otherwise provided by law for Settling Defendant's failure to pay stipulated penalties or interest; or (b) to seek any other remedies or sanctions available by virtue of Settling Defendant's noncompliances with this Decree or of the statutes and regulations upon which it is based, including penalties under section 122(*l*) of CERCLA, provided, however, that the United States may not seek civil penalties under section 122(*l*) of CERCLA for any noncompliance for which a stipulated penalty is provided for in this Decree, except in the case of a willful noncompliance with this Decree.

56.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## XIV.  COVENANTS BY PLAINTIFF

57.     **Covenants for Settling Defendant**. Subject to ¶ 59, the United States covenants not to sue or to take administrative action against Settling Defendant under sections 106 and 107(a) of CERCLA regarding the Work, Past Response Costs, and Future Response Costs.

58.     The covenants under ¶ 57: (a) take effect upon the Effective Date; (b) are conditioned on the satisfactory performance by Settling Defendant of the requirements of this Decree; (c) extend to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of Settling Defendant is based solely on its status as a successor of Settling Defendant; and (d) do not extend to any other person.

33

59.     **General Reservations**. Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, all rights against Settling Defendant regarding the following:

a.     liability for failure by Settling Defendant to meet a requirement of this Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based on Settling Defendant's ownership of the Site when such ownership commences after Settling Defendant's signature of this Decree;

d.     liability based on Settling Defendant's operation of the Site when such operation commences after Settling Defendant's signature of this Decree and does not arise solely from Settling Defendant's performance of the Work;

e.     liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, after signature of this Decree by Settling Defendant, other than as provided in the Interim Record of Decision, under this Decree, or ordered by EPA;

f.     liability for additional operable units at the Site or the final response action;

g.     liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the Remedial Action, but that are not covered by ¶ 21.a; and

h.     criminal liability.

34

60.     Subject to ¶ 57, nothing in this Decree limits any authority of Plaintiff to take, direct, or order all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or to request a Court to order such action.

## XV.     COVENANTS BY SETTLING DEFENDANT

61.     **Covenants by Settling Defendant**

a.     Subject to ¶ 62, Settling Defendant covenants not to sue and shall not assert any claim or cause of action against the United States under CERCLA, section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the State Constitution, State law, or at common law regarding the Work, past response actions relating to the Site, Past Response Costs, and Future Response Costs.

b.     Subject to ¶ 62, Settling Defendant covenants not to seek reimbursement from the Fund through CERCLA or any other law for costs of the Work, past response actions regarding the Site, Past Response Costs, and Future Response Costs.

62.     **Settling Defendant's Reservation**. The covenants in ¶ 61 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 59.a through 59.h.

63.     **De Micromis Waiver**. Settling Defendant shall not assert any claims and waives all claims or causes of action (including claims or causes of action under sections 107(a) and 113 of CERCLA) that it may have for all matters relating to the Site against any person where the person's liability to Settling Defendant with respect to the Site is based solely on having

35

arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials. This waiver does not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued under sections 104(e) or 122(e)(3)(B) of CERCLA or section 3007 of RCRA, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or (iii) such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise. This waiver does not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person otherwise covered by this waiver if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

64.    Settling Defendant agrees not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

36

## XVI.  EFFECT OF SETTLEMENT; CONTRIBUTION

65.     The Parties agree and the Court finds that: (a) the complaint filed by the United States in this action is a civil action within the meaning of section 113(f)(1) of CERCLA; (b) this Decree constitutes a judicially approved settlement under which Settling Defendant has, as of the Effective Date, resolved its liability to the United States within the meaning of sections 113(f)(2) and 113(f)(3)(B) of CERCLA; and (c) Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Decree. The contribution protection under the preceding sentence extends to the successors of Settling Defendant but only to the extent that the alleged liability of the successor of Settling Defendant is based solely on its status as a successor of Settling Defendant. The "matters addressed" in this Decree are the Work, Past Response Costs, and Future Response Costs, provided, however, that if the United States exercises rights under the reservations in ¶¶ 59.a through 59.h, the "matters addressed" in this Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

66.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Decree, notify DOJ and EPA no later than 60 days prior to the initiation of such suit or claim. Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Decree, notify DOJ and EPA within 10 days after service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify DOJ and EPA within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

67.    **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated against Settling Defendant by Plaintiff for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

68.    Nothing in this Decree diminishes the right of the United States under section 113(f)(2) and (3) of CERCLA to pursue any person not a party to this Decree to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to section 113(f)(2).

## XVII. RECORDS

69.    **Settling Defendant Certification**. Settling Defendant certifies that: (a) to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any documents and electronically stored information relating to the Site, including information relating to its potential liability under CERCLA regarding the Site, since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site; and (b) it has fully complied with any and all EPA requests for information under sections 104(e) and 122(e) of CERCLA, and section 3007 of RCRA.

70.    **Retention of Records and Information**

a.    Settling Defendant shall retain, and instruct contractors and agents to retain, the following documents and electronically stored data ("Records") until 10 years after the Certification of Work Completion under SOW ¶ 5.8 (the "Record Retention Period"):

(1)    All records regarding Settling Defendant's liability under CERCLA regarding the Site;

(2)    All reports, plans, permits, and documents submitted to EPA in accordance with this Decree, including all underlying research and data; and

(3)    All data developed by, or on behalf of, Settling Defendant in the course of performing the Remedial Action.

b.    Settling Defendant shall retain all Records regarding the liability of any person under CERCLA regarding the Site during the Record Retention Period.

c.    At the end of the Record Retention Period, Settling Defendant shall notify EPA that it has 90 days to request the Settling Defendant's Records subject to this Section. Settling Defendant shall retain and preserve its Records subject to this Section until 90 days after EPA's receipt of the notice. These record retention requirements apply regardless of any corporate record retention policy.

71.    Settling Defendant shall provide to EPA, upon request, copies of all Records and information required to be retained under this Section. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

39

72.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a record requested by Plaintiff is privileged or protected as provided under federal law, in lieu of providing the record, provided that Settling Defendant complies with ¶ 72.b, and except as provided in ¶ 72.c.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiff with the following information regarding such record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a record, Settling Defendant shall provide the record to Plaintiff in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all records that it claims to be privileged or protected until Plaintiff has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c.     Settling Defendant shall not make any claim of privilege or protection regarding: (1) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other record that evidences conditions at or around the Site; or (2) the portion of any record that Settling Defendant is required to create or generate in accordance with this Decree.

73.     **Confidential Business Information (CBI) Claims**. Settling Defendant may claim that all or part of a record provided to Plaintiff under this Section is CBI to the extent permitted by and in accordance with section 104(e)(7) of CERCLA and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and shall clearly identify all records or parts thereof submitted under this Decree for which it claims is CBI by labeling each page or each electronic file

"claimed as confidential business information" or "claimed as CBI." Records that Settling Defendant claims to be CBI will be afforded the protection specified in 40 C.F.R. part 2, subpart B. If no CBI claim accompanies records when they are submitted to EPA, or if EPA notifies Settling Defendant that the records are not entitled to confidential treatment under the standards of section 104(e)(7) of CERCLA or 40 C.F.R. part 2, subpart B, the public may be given access to such records without further notice to Settling Defendant.

74.    In any proceeding under this Decree, validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA, if relevant to the proceeding, is admissible as evidence, without objection.

75.    Notwithstanding any provision of this Decree, Plaintiff retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XVIII.    NOTICES AND SUBMISSIONS

76.    All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever a notice is required to be given or a report or other document is required to be sent by one Party to another under this Decree, it must be sent as specified below. All notices under this Section are effective upon receipt, unless otherwise specified. In the case of emailed notices, there is a rebuttable presumption that such notices are received on the same day that they are sent. Any Party may change the method, person, or address applicable to it by providing notice of such change to all Parties.

As to DOJ:    *via email to*:
    eescdcopy.enrd@usdoj.gov
    Re: DJ # 90-11-3-12317

41

As to EPA:     *via email to*:
              freeman.caroline@epa.gov
                and
              saha.anita@epa.gov
              Re: Site/Spill ID # A46W

As to the EPA Program     *via email to*:
Analyst:     painter.paula@epa.gov
              Re: Site/Spill ID # A46W

As to Settling     *via email to*:
Defendant:     robin.m.staszak@us.abb.com

## XIX.  APPENDIXES

77.     The following appendixes are attached to and incorporated into this Decree:

"Appendix A" is the Interim Record of Decision.

"Appendix B" is the Explanation of Significant Differences.

"Appendix C" is the map of the Site.

"Appendix D" is the SOW.

## XX.  MODIFICATIONS TO DECREE

78.     Except as provided in ¶ 21 of the Decree and ¶ 7.6 of the SOW (Approval of

Deliverables), nonmaterial modifications to Sections I through XXIV and the Appendixes must

be in writing and are effective when signed (including electronically signed) by the Parties.

Material modifications to Sections I through XXIV and the Appendixes must be in writing,

signed (which may include electronically signed) by the Parties, and are effective upon approval

by the Court. As to changes to the remedy, a modification to the Decree, including the SOW, to

implement an amendment to the Interim Record of Decision that "fundamentally alters the basic

features" of the Remedial Action within the meaning of 40 C.F.R. § 300.435(c)(2)(ii) will be

considered a material modification.

## XXI.  SIGNATORIES

79.    The undersigned representative of the United States and the undersigned representative of Settling Defendant each certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

## XXII. PRE-ENTRY PROVISIONS

80.    If for any reason the Court should decline to approve this Decree in the form presented, this agreement, except for ¶ 81 and ¶ 82, is voidable at the sole discretion of any Party and its terms may not be used as evidence in any litigation between the Parties.

81.    This Decree will be lodged with the Court for at least 30 days for public notice and comment in accordance with section 122(d)(2) of CERCLA and 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations that indicate that the Decree is inappropriate, improper, or inadequate.

82.    Settling Defendant agrees not to oppose or appeal the entry of this Decree.

## XXIII.    INTEGRATION

83.    This Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements, and understandings, whether oral or written, regarding the subject matter of the Decree.

## XXIV.    FINAL JUDGMENT

84.    Upon entry of this Decree by the Court, this Decree constitutes a final judgment under Fed. R. Civ. P. 54 and 58 between the Parties.

SO **ORDERED** this 15th day of June, 2026.

_____
Honorable Sherri A. Lydon
United States District Judge

Signature Page for Consent Decree in *U.S. v. ABB, Inc.* (D. S.C.)

**FOR THE UNITED STATES OF AMERICA:**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Date:  March 19, 2026          BY: */s/ Brian Schaap*
                               BRIAN SCHAAP (D.C. Bar No. 1780655)
                               Trial Attorney
                               U.S. Department of Justice
                               Environment and Natural Resources Division
                               Environmental Enforcement Section
                               P.O. Box 7611
                               Washington, D.C. 20044-7611
                               Tel. (202) 598-0116
                               Email: brian.schaap@usdoj.gov

Signature Page for Consent Decree in *U.S. v. ABB, Inc.* (D. S.C.)

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

JAIME BROWN  Digitally signed by JAIME BROWN
Date: 2025.06.27 12:41:50 -04'00'

*For* Caroline Freeman
Director
Superfund & Emergency Management Division
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

JOHN
SHEESLEY  Digitally signed by JOHN
SHEESLEY
Date: 2025.05.28 11:31:43 -04'00'

JOHN SHEESLEY
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

46

Signature Page for Consent Decree in *U.S. v. ABB, Inc.* (D. S.C.)

FOR:    ABB, Inc.

2/11/25
Dated

Name:    MICHAEL GRAY

Title:    President

Address:    CARY, NC.

2/12/25 Robin M Staszak

Robin M. Staszak

Env. Project mgr

ABB Inc

45 Griffin Road South

Bloomfield, CT 06002

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. **Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service.** Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

Name:    Robin M. Staszak

Title:    Environmental Project Manager

Company:    ABB Inc.

Address:    45 Griffin Road South

Bloomfield, CT 06002

Phone:    860-278-6717

Email:    robin.m.staszak@us.abb.com

47